# EXHIBIT 1

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TEXAS
 2                          AUSTIN DIVISION

 3  THE BOARD OF REGENTS OF THE           ) AU:24-CV-01524-DAE
    UNIVERSITY OF TEXAS SYSTEM,           )
 4                                        )
       Plaintiff,                         )
 5                                        )
    v.                                    ) AUSTIN, TEXAS
 6                                        )
    ALNYLAM PHARMACEUTICALS INC.,         )
 7  ALNYLAM U.S., INC.,                   )
                                          )
 8     Defendant.                         ) APRIL 23, 2025

 9          ********************************************
                   TRANSCRIPT OF STATUS CONFERENCE
10                BEFORE THE HONORABLE MARK LANE
            ********************************************
11
    APPEARANCES:
12
    FOR THE PLAINTIFF:    CHRISTIAN JOHN HURT
13                        MCKOOL SMITH, P.C.
                          300 CRESCENT COURT, SUITE 1200
14                        DALLAS, TEXAS 75201

15  FOR THE DEFENDANT:    SYED K. FAREED
                          MCDERMOTT WILL & EMERY LLP
16                        300 COLORADO STREET, SUITE 2200
                          AUSTIN, TEXAS 78701
17
                          WILLIAM GEORGE GAEDE, III
18                        MCDERMOTT WILL & EMERY
                          415 MISSION STREET, SUITE 5600
19                        SAN FRANCISCO, CALIFORNIA 94105

20  TRANSCRIBER:          ARLINDA RODRIGUEZ, CSR
                          501 WEST 5TH STREET, SUITE 4152
21                        AUSTIN, TEXAS 78701
                          (512) 391-8791
22


23


24  Proceedings recorded by electronic sound recording, transcript

25  produced by computer.
```

```
 1       (Proceedings began at 9:21 a.m.)
 2            THE CLERK:  The Court calls AU:24-CV-01524, *The
 3  Board of Regents of the University of Texas System v.
 4  Alnylam Pharmaceuticals,* a hearing on the parties'
 5  proposed joint scheduling order.
 6            THE COURT:  Well, good morning, everyone.
 7  Let's start with announcements for the record.  Tell me
 8  who you are and who you represent.  We'll start over here
 9  on my left with the plaintiff.  And just reminder, no
10  court reporter, so you have to use one of these
11  microphones kind of pointed towards your face.
12            MR. HURT:  Thank you, Your Honor.
13  Christian Hurt from the law firm of McKool Smith, and
14  I'm here this morning on behalf of the Board of Regents
15  of the University of Texas System.  We're ready to
16  proceed, Judge.
17            MR. FAREED:  Good morning, Your Honor.
18  Syed Fareed from the law firm of McDermott Will & Emery
19  on behalf of the defendant, Alnylam.  And with me is my
20  colleague, Mr. Bill Gaede, who will be handling the
21  issues for today.
22            THE COURT:  All right.  Welcome, gentlemen.
23            Okay.  We're not going to be a lot of time.
24  First of all, let me kind of apologize but kind of tell
25  you I didn't have a choice.  This seems like a silly
```

1  reason to drive you-all into court to resolve this.  But,
2  nonetheless, I'm a creature of habit as well as, you
3  know, a good soldier here.  Judge Ezra ordered me -- sent
4  this limited order of referral to me and asked me to
5  resolve this.
6          As best I can summarize what you-all have
7  submitted, Plaintiffs want to get started.  Defense does
8  not until the motion to transfer and the motion to
9  dismiss are ruled on.
10         Here's my problem:  You're essentially asking
11 for a stay in the form of a scheduling order.  My thought
12 is, did you find any evidence in Judge Ezra's docket
13 practice where he did what you-all propose, which is the
14 60 days after the whatever after?  I mean, because I'm --
15 it's a loaded question, because I'm not -- I don't think
16 he does.
17         MR. GAEDE:  May I approach, Your Honor?
18         THE COURT:  You bet.
19         MR. GAEDE:  Yes, Your Honor.  I'm not aware of
20 that, but I do think this would be helpful to the Court.
21 And that is the *In re Netflix* case that they cite in
22 their papers.  And that's Federal Circuit authority on
23 this *per curiam* order.  And let me just lead to you what
24 is out of this.
25         It says on -- on the first page it says:

1  Delays in resolving transfer motions, coupled with
2  ongoing discovery, claim construction, and other
3  proceedings, frustrate the purpose of section 1404(a) by
4  forcing defendants to expend resources litigating
5  substantive matters in an inconvenient venue while a
6  motion to transfer lingers unnecessarily on the docket.
7           Then cite the *In re Google* case that is in
8  our -- that is in our papers.  That's 2015 Federal
9  Circuit.
10          It goes onto say, quote:  A stay of merits
11 proceedings is appropriate relief if the district court
12 cannot decide a venue motion quickly enough to avoid
13 burdening the moving party with unnecessary expense and
14 prejudice, period.  We have issued writs of mandamus
15 staying district court proceedings for similar delays in
16 addressing venue motions, period, close quote.
17          It then cites two cases.
18          And the point here, Your Honor, is:  In a venue
19 motion as is in the papers, resolution of that motion is
20 to be prioritized.  It is to have top priority in the
21 words of the Fifth Circuit in the *In re Horseshoe*
22 *Entertainment* case.
23          Also, it is Plaintiff's burden, as you know
24 from our papers and the context of the venue motion, to
25 show that discovery is a, quote, necessity.  That's the

1  standard of the law.  And goes on, as stated -- and we
2  have it further laid out in our reply brief in the motion
3  to dismiss and/or the transfer -- where venue discovery
4  is justified only where there is an indication of fraud
5  or misconduct in the defendant's affidavits and there is
6  a reason to believe that additional information would
7  alter the out come.
8          Here's another quote from another case cited
9  there, *DH International*.  Quote:  Ordering the parties to
10 complete venue discovery when it would not affect the
11 court's venue analysis would be an efficient -- an
12 inefficient use of judicial resources and of party
13 resources.
14         And that's the DH International, Limited,
15 2024 WL 3748039 at page 2.  That is in our reply brief in
16 the motion to dismiss, cited in the papers to you at a
17 page 10.
18         So the problem that we have here is Judge Ezra
19 has the motion to dismiss.  He also has the -- as part of
20 that, and part and parcel of that motion, is have they
21 met their burden to have discovery opened up?  And that's
22 in front of the judge.  That's not in front of the --
23 with all due respect, Your Honor, I don't see that as
24 part of the reference to this Court.
25         THE COURT:  No, it's not.  I'm very limited.

1  You're talking a lot about stays, and he's going to get
2  up and give me the cases that say stays are to be
3  disfavored.
4            MR. GAEDE:  Well, hold on, Your Honor, for one
5  second.  Those cases are not in the context of a venue
6  motion, the four.  And they're distinguished in our
7  papers under Rule 26(f).  But in the context of venue
8  motion, you have clear authority in the case that they
9  cited, in the *In re Neflix* case, about a stay is
10 appropriate.
11           But really, Your Honor, let's look at it this
12 way:  I don't think this involves necessarily the concept
13 of a stay as compared to just sound case management that
14 allows, which is the public policy behind section 1404
15 and motion to dismiss and transfer, to be prioritized, to
16 not undo that.  And then to have a time period when it
17 will open as soon as that issue is resolved.  I don't
18 really think of that as a stay.  I think of it as sound
19 case management, respecting the law in terms of a
20 prioritized motion that has to be resolved.  But,
21 regardless, the *Neflix* case clearly says it's
22 appropriate.
23           And let me jump to, Your Honor, I think two
24 other quick points, and then I'm sure my colleague will
25 have something to say.  There's no prejudice here on the

1  stay.  This patent issued in 2015.  Our product came out
2  onto the market in 2018 or so, and they filed this suit
3  finally in 20 -- late 2024.
4           Allowing the public policy of the prioritized
5  motion to transfer to be resolved by Judge Ezra in no way
6  prejudices this plaintiff, particularly given their
7  record here.
8           THE COURT:  How does it prejudice you-all to
9  not enforce the stay?
10          MR. GAEDE:  Exactly.  It prejudices us because,
11 first, it takes away the pending motion -- part of the
12 pending motion from Judge Ezra and then forces us into
13 discovery that the courts all recognize is unnecessary,
14 unless in the motion for venue it's required and they
15 have met their burden.
16          THE COURT:  Not to be flippant, but let me ask
17 it a different way, then.
18          MR. GAEDE:  Yeah.
19          THE COURT:  Let's say you win on your motion to
20 transfer --
21          MR. GAEDE:  Yeah.
22          THE COURT:  -- and go somewhere else.  Isn't
23 this discovery material you're going to be exchanging
24 anyway?  I don't understand the prejudice you're going to
25 suffer.  You need to speak to that.

1           MR. GAEDE: Yeah. Sure. In terms of the
2  discovery, a couple of points on that: First of all,
3  sure, maybe some of the documents in our electronic age
4  can be as easily produced here as in Massachusetts. I'm
5  not sure on that, but let's grant that.
6           Depositions, though, Your Honor. All the
7  contacts are in Massachusetts. This is not a case where
8  we have an ongoing, you know, place of business here in
9  Austin, Texas, and the vast majority of witnesses are in
10 the District of Massachusetts. And the two witnesses on
11 their side, the inventors, they're not even in this
12 district. So the inefficiencies that are inherent in --
13 in requiring discovery in those circumstances for a
14 proceeding going on down here do speak to the prejudice.
15          Now, if I may, Your Honor, that's why we
16 presented the proposal that we did. It made the most
17 sense. It's consistent with the law in terms of
18 prioritizing the venue motion. It's consistent with
19 their having to meet their burden for discovery to open
20 and for Judge Ezra to decide that, and it's consistent
21 with their lack of real diligence and no prejudice to
22 them.
23          But let me show you which might be helpful to
24 the Court. I did a schedule that just goes -- let's say
25 we have May 30th a decision by Judge Ezra. Now, the

1  motion has been pending since the end of February.  There
2  was some submissions over a sur-reply.  Let's say that
3  that was finished by mid-March.  So the motion is pending
4  in front of Judge Ezra.  And if I could hand up to
5  Your Honor, I'll hand it to my *[unintelligible]*.
6          May I approach?
7          THE COURT:  Sure.
8          MR. GAEDE:  You can see this side by side.
9          THE COURT:  Okay.
10         MR. GAEDE:  And, again, I think then, as you
11 can see for the most part, there's a slight difference --
12 a couple of months -- given this time which allows for
13 the motion to be prioritized, allows for it to be heard.
14 Secondly, it would result in, if you look at our
15 schedule, probably full resolution at summary judgment
16 briefing by the end of the year of 2026, there around
17 August of 2026.
18         So not a great difference between the proposals
19 that are before you, but it does allow the public policy
20 behind this motion to be effectuated and not to, in
21 essence, take away from Judge Ezra his authority to
22 decide what is appropriate in this case.  And it allows
23 the parties' resources to be conserved until that motion
24 is resolved by the court.
25         THE COURT:  I hear you, and I'm going to hear

```
 1  from the other side.  Here's my problem.  Then why didn't
 2  he just stay everything until he's going to -- does the
 3  transfer or handles the transfer and dismissal motion?
 4  He didn't do that.  He didn't do it.  He sent me -- sent
 5  it to me to come up with a scheduling order that drives
 6  the case.
 7             MR. GAEDE:  Yeah.  I think our scheduling order
 8  is the only logical proposal.  If the Court feels,
 9  though, that there's for some reason it wants to adopt an
10  alternative schedule, we would, not happily, but we will
11  obviously accept a proposal along the lines of ours with
12  those dates if the Court feels is appropriate to have
13  dates.
14             That will still give then, Judge Ezra the time
15  that he needs to resolve that motion before we open
16  discovery.  Opening discovery right now does not give
17  Judge Ezra that time of that prioritized motion.
18             THE COURT:  Okay.  Thank you.
19             MR. HURT:  Good morning, Your Honor.
20  Christian Hurt for the plaintiff.
21             Your Honor's question about prejudice to the
22  defendant, it hit the nail on the head.  There's no --
23  for merits discovery we've got to do same thing, whether
24  we're here or in Massachusetts.  The only distinction I
25  heard, Your Honor, was depositions of witnesses.  But, as
```

1  Your Honor knows, those happen where the witnesses live.
2  So whether that case is here or in Massachusetts, we're
3  going to go to Boston to take those depositions and
4  they're going to go to Houston to take those depositions.
5  There's no difference in that.
6         And so for that reason we think the schedule
7  should get entered now.  As Your Honor mentioned,
8  Judge Ezra referred the case to enter the schedule.
9  There's no prejudice to them.  Instead, what I've heard
10 the focus on is about the venue motion, and I want to say
11 a few things about that.
12        The first is none of that affects merits
13 discovery.  None of that affects the schedule.  The
14 Federal Circuit cases that Mr. Gaede referenced,
15 particularly the *Neflix* case denied a writ of mandamus
16 asking for a stay.  And the reason was because the court
17 was -- proceeding accordingly, was going to resolve the
18 motion to transfer prior the claim construction hearing.
19        Even under our schedule, the *Markman* hearing
20 isn't going to happen until early next year, at which
21 point their motion would have been pending over a year.
22 So there's no requirement that the Court stay the case.
23 And, in fact, to Your Honor's first question, they didn't
24 cite a single case, whether from Judge Ezra or any other
25 judge in this district, that grants a stay pending a

1  motion to transfer.  And so we think the appropriate
2  course is to enter the schedule.
3          And as to the new schedule, Judge, this is the
4  first time I've seen this.  We've asked for a proposal
5  from them for a while and haven't seen one.  I'd have to
6  I digest it, but I think this even recognizes that the
7  appropriate path is to enter the schedule and go forward.
8          The issue that was referred to maybe three or
9  four times was the venue discovery, which is a different
10 issue.  Our view, Judge, is that all discovery should
11 open up.  It only makes sense for, once discovery is
12 opened, for efficiency's sake to, you know, do all of
13 that discovery.
14         And to Your Honor's point, the judge,
15 Judge Ezra, could have stayed all discovery if he wanted
16 to.  And I thought that we were close on venue discovery,
17 because Alnylam told the Court -- and this is their reply
18 brief, Docket 25 -- that they were open to taking
19 discovery and that the issue was basically how much.
20         We wanted what Judge Albright gives parties as
21 a matter of course, so I want to correct something my
22 counterpart said on the law.  For venue discovery some
23 judges say you get it automatically.  That's
24 Judge Albright.  Some judges say, if you have a
25 declaration, you get it.  And then some judges say, well,

1  if there's no indication of fraud or misconduct, the
2  judge has discretion to deny venue discovery.  And it is
3  a discretionary call.  And I thought, you know, we were
4  pretty close on that, but their position now is we don't
5  get any venue discovery.  But I want to make one point on
6  why we need it and why it's appropriate, since that was
7  the focus of my counterpart's argument.
8           Their motion hinges on a declaration,
9  Your Honor, that they admit contains a false statement,
10 and they will not put their declarant up for a
11 deposition.  And I'll show Your Honor briefly what that
12 is.  We had mentioned it in the -- in the brief, briefly.
13 But a key issue in the venue decision, Your Honor, is how
14 much connections does Alnylam have to this district.  And
15 they had a sworn declaration that said they don't have
16 any.  They've got some remote employees.  They live here
17 on their own volition.  We don't require them to live
18 here.
19          Under the law that's a pretty -- pretty
20 important venue fact.  They actually said, hey, here's a
21 whole bunch of cases that say when that's the case, you
22 don't have venue.
23          We pointed out, Your Honor, that that statement
24 was incorrect.  And what happened is, in the reply
25 briefing, they had to retract that statement.  We got a

1  second declaration. It says, well, after I looked into
2  it, you know what? There are a few people who are in
3  this district that we require to be here.
4          And that's why we want the venue discovery of
5  this declarant. They haven't withdrawn that first
6  declaration. Even under this standard of -- of fraud or
7  misconduct or something is clearly wrong with the
8  declaration, we think it's met. But, more importantly,
9  Your Honor, the referral order was to enter the schedule
10 which opens up fact discovery, and we think as part of
11 opening up that discovery, we should do both merits and
12 venue discovery together.
13         And we tried to engage on some dates with them.
14 You know, they held firm on the stay position, so we
15 think our schedule should get entered.
16         Unless Your Honor has questions for me,
17 that's ...
18         THE COURT: I don't.
19         MR. HURT: Thank you, Your Honor.
20         MR. GAEDE: Briefly, Your Honor?
21         THE COURT: Sure.
22         MR. GAEDE: I think as we all know,
23 Judge Albright stays all discovery before the *Markman*
24 hearing, and so it's not unusual in that context -- and
25 that was the case that we also distinguished away --

1 where he did then order discovery into the venue issue as
2 part of prioritizing.
3      Point number two is counsel's essentially
4 inviting you to wade into the merits of the motion to
5 dismiss.  What is crystal clear is that one or two people
6 in a district is insufficient to establish venue in that
7 district.  Every thing else is located in Boston or in
8 other parts of the country.
9      And so the motion on the merits is
10 extraordinary strong, and I think even my colleague would
11 admit, is in good faith.  And identifying one or two
12 people in the district does not constitute grounds to
13 establish proper venue in this district.
14      But, most importantly, by opening discovery, he
15 allows -- it takes away from Judge Ezra's consideration
16 of the motion and, with all due respect, puts it in your
17 hands, when it's really in his hands right now.
18      THE COURT:  Yeah.  I'm not going down that
19 path.
20      MR. GAEDE:  And so I think the way to do it is
21 to compromise the way we did and say here are dates.  And
22 if Your Honor feels that he needs to put in dates, then I
23 think we've given an alternative that gives Judge Ezra
24 time in order to resolve that motion on the prioritized
25 basis and protects us from having to engage in discovery

```
 1  and the work process until we get the appropriate venue
 2  transferred, and this Court doesn't waste anymore
 3  resources on that until that motion gets resolved.
 4            THE COURT:  Okay.  As you guys undoubtedly
 5  know, Judge Albright loves standing orders.  If I had one
 6  here, that would be great.  I don't.  I don't have a
 7  standing order from Judge Ezra as to how he wants to
 8  handle these types of things.  And let me -- after 13
 9  years, I can tell you with certainty telling one district
10  judge how to do things based on how another district
11  judge does it, bad form, it doesn't work, usually blows
12  up in your face.  So how Judge Albright does it, it's
13  great.  He's a friend, and he moves a lot of these
14  difficult cases.  But he's -- he's not Judge Ezra.
15  Judge Ezra is a different judge.
16            So with that obvious fact being said, I -- I'm
17  a literal guy.  And when I look at this order of
18  referral, when I know that Judge Ezra has the easy
19  ability to stay discovery if he feels that's appropriate,
20  he didn't do it.  Nor have you filed a motion for a stay.
21  Maybe you'll do that after my order.  I'm adopting the
22  plaintiff's scheduling order, and I'm not going to -- I
23  don't have time to go through their proposed dates and
24  compare them to the individual dates that the defense
25  proposed.
```

1          You -- this was a principled pitch battle
2   between two different theories of what we're supposed to
3   do here this morning, and so I don't criticize the
4   defense for not giving me specific dates.  I probably
5   would have done the same thing you-all did.  But my
6   problem is the only specific dates I really have are from
7   the plaintiff.
8          So, Mr. Hurt, if you would share a Word version
9   of the proposed scheduling order that you-all have,
10  without all the interlineations, with my law clerk.  Of
11  course, share that final proposed draft with the defense
12  as well.  That's what I'm going to enter into.  But I'm
13  not a fool.  This is a bit frustrating for me because
14  this should not have taken your time or my time, but it
15  does.  Here we are.
16         And I don't -- I can't read a crystal ball.
17  The good thing about the job is the district judges don't
18  tell us what to do, and so I don't have any guidance from
19  Judge Ezra as to how -- for instance, how he feels about
20  staying discovery with pending transfer motions and
21  motions to dismiss.  It just -- but the logic tells me
22  that that would have been so easily handled before he
23  instead entered this limited order of referral.
24         So I have to interpret that literally.  I'm
25  going to adopt the plaintiff's dates.  It's not lost on

1  me that what's going to happen not too long after that is
2  perhaps the defense files a formal motion to stay.  They
3  very well will is what I anticipate.  And then
4  Judge Ezra, as I've noticed over the years, is pretty
5  forgiving if the parties decide to extend dates.  This is
6  a bit of a -- I'm not really sure what we're
7  accomplishing here this morning, but we're accomplishing
8  it.
9         So I don't know what to tell you.  I probably
10 will see you guys some more if this case stays here.  And
11 if it doesn't, good luck in Massachusetts.  And just to
12 really sum it all up, Mr. Gaede, I just didn't hear any
13 real prejudice.  I understand the principles you're
14 espousing, but the depositions will be taken in Boston or
15 Houston or Austin, where some of these executives may
16 have been.  And so that's going to happen either way in
17 that location, and the documents that are going to be
18 exchanged, they're going to be exchanged whether you're
19 doing it here in Austin or you're doing it in
20 Massachusetts.
21         So, anyways, I'm bloviating up here.  Good luck
22 with the case, guys.  We're adjourned.
23     (Proceedings concluded at 9:44 a.m.)
24
25

```
 1                    REPORTER'S CERTIFICATE
 2       I, Arlinda Rodriguez, do hereby certify that the foregoing
 3  was transcribed from an electronic recording made at the time
 4  of the aforesaid proceedings and is a correct transcript, to
 5  the best of my ability, made from the proceedings in the
 6  above-entitled matter, and that the transcript fees and format
 7  comply with those prescribed by the Court and Judicial
 8  Conference of the United States.
 9
10  /S/ Arlinda Rodriguez                      April 28, 2025
11  ARLINDA RODRIGUEZ                          DATE
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```