**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM<br><br>        Plaintiff,<br><br>vs.<br><br>ALNYLAM PHARMACEUTICALS INC. AND ALNYLAM U.S., INC.<br><br>        Defendants | Civil Action No. 1:24-cv-1524-DAE<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE**
**COMPLAINT FOR IMPROPER VENUE OR**
**IN THE ALTERNATIVE TRANSFER UNDER RULE 12(b)(3) (Dkt. 70)**

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    VENUE IS PROPER IN THE WESTERN DISTRICT OF TEXAS ..................................2

    A.     Defendants' Remote Employees................................................................2

        1.     The Remote Employees' Homes Are Physical Places of Business in This District ...............................................................................2

        2.     Defendants Places of Business Are Regular and Established....................7

        3.     The Remote Employee Homes Are of the Defendants..............................8

    B.     Defendants' Clinical Trials .......................................................................9

        1.     The Trial Sites Are Physical Places of Business in This District ...............9

        2.     The Trial Sites Are Regular and Established Places of Business ...............9

        3.     The Clinical Trial Sites are the Place of the Defendants ...........................13

III.   THE COURT SHOULD NOT TRANSFER THIS CASE .................................................14

    A.     The Private Interest Factors Do Not Favor Transfer ................................15

        1.     The Cost of Attendance for Willing Witnesses Does Not Favor Transfer ...................................................................................................15

        2.     The Sources of Proof Factor Does Not Favor Transfer ............................17

        3.     The Compulsory Process Factor Does Not Favor Transfer ......................18

        4.     The Other Practical Problems Factor Do Not Favor Transfer ..................19

    B.     The Public Interest Factors Do Not Favor Transfer.................................20

IV.    CONCLUSION................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Scan v. Chrome,*
2024 WL 1117933 (E.D. Tex. Mar. 14, 2024) ...............................................................12, 13

*4WEB v. NuVasive,*
2024 WL 1932416 (E.D. Tex. May 2, 2024)..........................................................................14

*AGIS v. Google,*
2022 WL 1511757 (E.D. Tex. May 12, 2022).................................................................12, 13

*Bausch v. Mylan,*
2022 WL 683084 (D.N.J. Mar. 8, 2022)................................................................................14

*Beijing Meishe v. Tiktok,*
2023 WL 2903978 (W.D. Tex. Apr. 11, 2023).....................................................14, 18, 19, 20

*Bel Power v. Monolithic Power,*
2022 WL 2161056 (W.D. Tex. June 15, 2022) ........................................................................7

*In re Cordis,*
769 F.2d 733 (Fed. Cir. 1985)..................................................................................................2

*In re Cray Inc.,*
871 F.3d 1355 (Fed. Cir. 2017).......................................................................................2, 8, 9

*Ecofactor v. Resideo,*
2022 WL 13973997 (W.D. Tex. Oct. 21, 2022) ....................................................................20

*In re Google LLC,*
949 F.3d 1338 (Fed. Cir. 2020)..........................................................................................2, 11

*In re Google,*
949 F.3d at 1345–46 ..............................................................................................................11

*In re Hoffmann,*
587 F.3d 1333 (Fed. Cir. 2008)..............................................................................................20

*In re Hulu,*
2021 WL 3278194 (Fed. Cir. Aug. 2, 2021)..........................................................................18

*Intell. Ventures v. BITCO,*
2015 WL 11616297 (E.D. Tex. Sept. 14, 2015).....................................................................2

*IOT Innovations v. Monitronics*,
   2023 WL 6318049, at *2 (E.D. Tex. Sept. 11, 2023) ...................................................... *passim*

*Jawbone Innovations v. Apple*
   No. 6:21-CV-00984-ADA, Dkt. No. 103 (W.D. Tex. Oct. 5, 2022) ........................................17

*Marble VOIP v. RingCentral*,
   2023 WL 3938480 (W.D. Tex. June 9, 2023) .........................................................................15

*In re Monolithic Power*,
   50 F.4th 157 (Fed. Cir. 2022) ...............................................................................................3

*In re Planned Parenthood*,
   52 F.4th 625 (5th Cir. 2022) .................................................................................................18

*RegenLab USA LLC v. Estar Techs. Ltd.*,
   335 F. Supp. 3d 526 (S.D.N.Y. 2018).............................................................................2, 3, 7

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ...........................................................................................15, 18

*Univ. of Minn. v. Gilead*,
   299 F. Supp.3d 1034 (D. Minn. 2017)...................................................................................14

*Vervain LLC v. Kingston Tech. Co.*,
   No. 24-cv-00254, Dkt. No. 56 (W.D. Tex. Jan. 28, 2025) .....................................................17

## I.    INTRODUCTION

Defendants claim that "discovery confirmed the facts set forth in the Bossone declarations." Mot. at 1. But the opposite is true—discovery confirmed that Mr. Bossone's declarations are not reliable and should be given no weight. And because the renewed Motion, like the original Motion, hinges on Mr. Bossone's testimony, this Motion should be denied.

The first Motion, backed by Mr. Bossone's declaration, claimed that none of Defendants' employees "are required to live in the District or even within in the State of Texas." Dkt. 21 at 5 (quoting First Bossone Decl. (Dkt. 21-1) at ¶ 10). That statement was false, as Mr. Bossone admitted. Dkt. 25-1 (Second Bossone at Decl. at ¶ 9); Ex. 1 (Sept. 11, 2025 Dep. of S. Bossone) at 17:9–18:5, 19:9–19. Defendants, in fact, do require employees to live in this District.

Likewise, the first Motion also claimed that Defendants' job listings "do not require that any Alnylam employee reside within the District." Dkt. 21 at 1 (citing First Bossone Decl. (Dkt. 21-1) at ¶ 13). Defendants never corrected or retracted that statement. But Mr. Bossone admitted at his deposition that his declaration (and the Motion's statement) on this point was also false:

> Q.    So would you agree with me that paragraph 13's statement that none of Alnylam's job advertisements list residence in the district as a requirement, that statement is not accurate, in view of this job posting that's Exhibit 3?
>
> A.    Correct. Again, at the time I executed this, it was what I believed. But subsequent investigation led me to understand that it wasn't correct.

Ex. 1 (Bossone Dep.) at 30:16–24; Ex. 2 (Bossone Dep. Ex. 3) ("Must live within assigned territory" of San Antonio). Defendants' job postings do require their employees to live here.

These are two examples. But the common thread that runs through Mr. Bossone's declaration is that statements on key venue facts have proven to be inaccurate. The Court should disregard the declaration in its entirety.

The Court's venue ruling is only as good as the evidence on which is it based.  *Intell. Ventures v. BITCO*, 2015 WL 11616297, at *2 (E.D. Tex. Sept. 14, 2015) ("When important venue facts . . . are so overtly mischaracterized, the Court rightfully hesitates to accept the rest of the attorney's arguments or the declarant's statements.").  Here, the evidence shows that Defendants do have a regular and established place of business here.  It shows that it is not clearly more convenient to try this in Massachusetts than it is here.  For these reasons, The Board of Regents of the University of Texas System ("The University") requests the Court deny this Motion.

## II.    VENUE IS PROPER IN THE WESTERN DISTRICT OF TEXAS

Venue is proper under Section 1400(b).  Defendants only challenge the "regular and established place of business" prong of Section 1400(b).  A defendant has a regular and established place of business in a district where (1) there is a physical place, (2) it is regular and established, and (3) it is the defendant's place through employees or agents regularly conducting the defendant's business. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017); *In re Google LLC*, 949 F.3d 1338, 1340 (Fed. Cir. 2020).  All three prongs are met in this case.

### A.    Defendants' Remote Employees

#### 1.    The Remote Employees' Homes Are Physical Places of Business in This District

Courts have concluded that a remote employee's home can constitute a physical place of business.  *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 550 (S.D.N.Y. 2018) (finding regular and established place of business based on one employee's home office and a former employee's home office); *IOT Innovtions v. Monitronics*, 2023 WL 6318049, at *2 (E.D. Tex. Sept. 11, 2023), report and recommendation adopted, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023) ("The first requirement—that there is a physical place in this District—is met by virtue of several Brinks Home's service technicians who have homes in this District."); *In re Cordis*, 769

F.2d 733, 736–37 (Fed. Cir. 1985) (upholding finding of proper venue based on "two full-time sales representatives" in the District).  Here, Defendants have a place of business in this District.

First, Defendants' sales representatives are "assigned to a particular market, and several of them live and work within this District."  *IOT*, 2023 WL 6318049, at *3; Ex. 5 (Regan Dep.) at 20:20-21:23 (identifying employees whose region includes Texas); Ex. 9 (Bullock Dep.) at 9:8–23, 10:10–17; see *id.* at 14:11–17 (testifying that ███████████████████████████ ██████████████████████████████████████████"); Ex. 10 (Smith Dep.) at 15:2–16:16 (identifying sales reps that cover San Antonio and West Texas).  Defendants' sales representatives, Heather Smith and Kimberly McAlarney, are assigned to territories in this District (Austin and San Antonio, respectively) and live in the District.  Ex. 3 (Smith Offer Letter); Ex. 4 (McAlarney Offer Letter); Ex. 9 (Bullock Dep.) at 12:17–14:12 (testifying that Austin and San Antonio representatives have "the general requirement that they live in the territory" because it "███████ ████████████████████████████████████████████████████████████████").  Defendants' medical liaison (Jane Regan) is also assigned to a market that includes this District and lives here.  Ex. 5 (Regan Dep.) at 10:3-14.  Indeed, courts have found that home offices can suffice as regular-and-established places of business even when the employees are not required to live in the District.  *See id.* (finding venue even though "service technician employment may not be expressly conditioned on residing in a specific district"); *In re Monolithic Power*, 50 F.4th 157, 159 (Fed. Cir. 2022) (upholding venue even though "none of [the] Western District employees were required to reside there"); *RegenLab*, 335 F. Supp. 3d at 550 (finding venue proper even when Defendant "d[id] not require sales people to live in their assigned territory").

Defendants' level of control, however, goes even further.  Defendants required their sales representatives to live in this District as a condition of hiring them—a fact Defendants (and Mr.

Bossone) misrepresented in their first Motion and never corrected. Ex. 6 (Sept. 12, 2025 Dep. of T. Fenniman) at 21:5-14, 23:18-24:15, 53:2–19; Ex. 7 (ALNY_REGENTS_VD_00001228) at 1229 (job description stating candidate "[m]ust live within assigned territory"); Ex. 8 ALNY_REGENTS_VD_00001245 at-1246 (job listing for San Antonio candidate wherein to qualify one "[m]ust live within assigned territory"). Defendants likewise require those sales representatives (Ms. Smith and Ms. McAlarney) to live in the District, another fact Defendants (and Mr. Bossone) misrepresented. Ex. 1 (Bossone Dep.) at 17:9–18:5, 19:9–19. And these employees generally must also ███████████████████████████████ ███████████████████████████████████████—a fact Defendants (and Mr. Bossone) omitted. Ex. 6 (Fenniman Dep.) at 14:10-16, 21:10-23:10, 53:2-18; Ex. 9 (Bullock Dep.) at 24:5-12. These facts solidify that Defendants have a physical place of business in this District because they require their employees to be physically located here.

Second, a sales representative's home is a ███████████████" from which the representative carries out Defendants' business. Ex. 10 (Smith Dep.) at 31:19-32:4; Ex. 5 (Regan Dep.) at 12:4-16:6 (testifying that ██████████████████████████████████ ████████). The work includes ██████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████ in the District. Ex. 10 (Smith Dep.) at 19:7-25, 35:9-36:11. Defendants subsidize that workspace by ███████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████. Ex. 10 (Smith Dep.) at 32:5-14, 34:7-35:8, 41:4-11, 43:10-44:1; Ex. 9 (Bullock Dep.) at 18:19-19-20:10, 33:3-7; Ex. 6 (Fenniman Dep.) at 29:20-32:9. Ms. Smith testified that that ███████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████. Ex. 10 (Smith Dep.) at 43:10-44:1.

Third, Defendants (upon hire) provide the sales representatives in this District with company vehicles—which are registered in Texas to Defendants—to store at their houses along with sales literature for Defendants' products. Ex. 10 (Smith Dep.) at 32:5-14, 32:25-33:17, 34:7-35:8; Ex. 9 (Bullock Dep.) at 18:23-20:12, 21:15-22:4; Ex. 6 (Fenniman Dep.) at 27:20-28:24, 30:6-13; Ex. 5 (J. Regan Dep.) at 25:18–26:5, 30:2–8; Ex. 11 (ALNY_REGENTS_VD_00001237) at -1238–1239 (J. Regan offer letter with company car listed); Ex. 12 (Texas Dept. of Motor Vehicle registrations for Alnylam employees' company cars).

```
                    TEXAS DEPARTMENT OF MOTOR VEHICLES
                    VEHICLE TITLES AND REGISTRATION DIVISION

LIC WMG5309 FEB/2027 OLD # WMB7675 FEB/2027 EWT  4800 GWT   4800
PASSENGER-TRUCK PLT, STKR              REG CLASS  25  $ 148.00 WILLIAMSON CNTY
TITLE 0156254585314426 ISSUED 07/25/2025 ODOMETER 10 REG DT 04/29/2025
YR:2025 MAK:VOLV MODL:XC9 BDY STYL:LL VEH CLS:PASS          SALE PRC:   $54253.00
VIN: YV4062JE6S1342471 BODY VIN: COLOR: GRAY
PREV TTL: JUR TX TTL # 24632545774151829 ISSUE 05/07/2025
PREV OWN   VOLVO CARS CARLSBAD,GURNEE,IL
OWNER      WHEELS LT,,666 GARLAND PLACE,,DES PLAINES,IL,60016
VEHL LOC  3855 BROADWAY PATH,,ROUND ROCK,TX,78681
RNWL RCP  ALNYLAM US INC,,,,,
PLATE AGE:  0  LAST ACTIVITY 07/25/2025 RLSAUT OFC: 297
REMARKS ACTUAL MILEAGE.DATE OF ASSIGNMENT:2024/11/26.PAPER TITLE.FUEL TYPE:
GAS.
```

The purpose of these vehicles is to allow Defendants' employees to ██████████████

██████████████████████████████████████████████. Ex. 9 (Bullock Dep.) at 18:5-18, 25:1-13, 26:4-20; Ex. 10 (Smith Dep.) at 35:9-36:2; Ex. 6. (Fenniman Dep.) at 27:20-28:24. Defendants' first Motion (and Mr. Bossone) omitted these facts, but they bear on the venue analysis—the *IOT* Court found venue where the defendant provided technicians with a company vehicle. 2023 WL 6318049 at *3. Recognizing this fact weighs in favor of venue, Defendants preemptively cite several cases stating a vehicle—without more—is insufficient to

establish venue.  Mot. at 9–10.  But the *IOT* Court expressly distinguished instances when "there was no evidence" that the cars' drivers "stored cars or inventory provided by [the defendant] at their homes."  *IOT*, 2023 WL 6318049, at *3.  There is that type of evidence here.

Fourth, like *IOT*, Defendants' sales representatives "travel from their homes to customers" for sales calls "in this District by bringing their company vehicles" and product literature.  2023 WL 6318049, at *3.  These positions require the employee to live in the territory " ████████████████ ████████████████████████████████████ " Ex. 6 (Fenniman Dep.) at 21:21-22:9, 23:18-24:15.  Their "████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ Ex. 9 (Bullock Dep.) at 18:5-18, 25:1-13, 26:4-20. This includes selling Alnylam's products. Ex. 10 (Smith Dep.) at 10:25-11:2.

Indeed, ████████████████████████████████████████ ████████████████████████████████████████████ ████████ Ex. 6. (Fenniman Dep.) at 27:20-28:24.  Ms. Smith confirmed that Defendants provide her with a car and ██████████████████████████████████. Ex. 10 (Smith Dep.) at 34:7-21. This is unsurprising given that Ms. Smith is "██████████████████████ ██████████████████████████████████. *Id.* at 35:9-2.  For these meetings, Defendants arm sales representatives with ████████████████ ████████████████████████████████████████████. *Id.* at 18:9-19:3. Ms. Smith further testified that Defendants provide an "████████████████ ████████████████████████████████████████████ ████████████████████████████████████. *Id.* at 32:15-33:18; Ex. 9 (Bullock Dep.) at 21:15–22:4.

### 2.    Defendants Places of Business Are Regular and Established

"The second requirement—that the physical place be a regular and established place of business—is also satisfied by virtue of" Defendants' employees "who have homes in this District." *IOT*, 2023 WL 6318049, at *3. "To satisfy the 'regular and established' requirement, a business may be 'regular' if it operates in a steady, uniform, orderly, and methodical manner, and 'established' if it is not transient but instead settled certainly or fixed permanently." *Id.* (quoting *Cray*, 871 F.3d at 1362).

Defendants solicit employees to work in territories in the District through their job postings and require that they live in their assigned territories. *See, e.g.*, *Bel Power v. Monolithic Power*, 2022 WL 2161056, at *2 (W.D. Tex. June 15, 2022) ("employer solicited salespeople in public advertisements to cover the challenged venue area and preferred that those employees live in their assigned area" which was evidence that the defendant "believed the location to be important to the business performed"); *RegenLab*, 335 F. Supp. 3d at 550–51 (finding regular-and-established prong met where Defendant "tries to hire people living within their assigned sales territory" and its job postings "reveal that it seeks out territory managers for specific locations").

Defendants also provide vehicles and ████████████████████████████ to support the sales of their drugs. Similar to *IOT*, Defendants' employees travel from their homes—in company vehicles—to healthcare providers in this District to provide information and education on, and ultimately sell, Defendants' products. 2023 WL 6318049, at *3.

Defendants also provide ████████████████████████████████████ another fact Defendants omitted from Mr. Bossone's declaration.  Ex. 9 (Bullock Dep.) at 26:18–28:9 (describing ████████████████████████████████████ ████████████████████████████████████████████).

Each quarter, Defendants provide a ████████████████████████████    Ex. 10

(Smith Dep.) at 19:7-21:12. Defendants then provide 

. Ex. 9 (Bullock Dep.) at 25:1-13, 26:4-20; Ex. 10 (Smith Dep.) at 51:23-52:10, 53:2-

16 (testifying that she receives 

). Each territory (*e.g.*, Austin) and region (*e.g.*, Texas) has its

own specific, tailored 

. Ex. 9 (Bullock Dep.) at 26:18-28:9, 35:1-36:25. Defendants' sales spreadsheet

likewise shows continuous shipments of the Accused Product (ONPATTRO) into Austin 

. Ex. 13 (excerpt of Bullock Dep. Ex. 4

(ALNY_REGENTS_VD_00001215)). Therefore, the second *Cray* factor is met.

### 3.     The Remote Employee Homes Are of the Defendants

Defendants' employees' homes in this District are of the Defendants. "To assess whether

a regular and established place of business is 'of the defendant,' the Federal Circuit explained that

'the defendant must establish or ratify the place of business,' and that certain considerations

include 'whether the defendant owns or leases the place, or exercises other attributes of possession

or control over the place.'" *IOT*, 2023 WL 6318049, at *4 (quoting *Cray*, 871 F.3d at 1363).

Here, for the reasons above, having a presence in this District is "important" to Defendants'

business. *IOT*, 2023 WL 6318049, at *4. Their assignment of sales representatives "to particular

markets," such as Austin and San Antonio, "demonstrates that importance." *Id.* In *IOT*, the Court

found that the service technicians' homes were places of business of the defendant, even though

"service technician employment may not be expressly conditioned on residing in a specific

district." *Id.* Here, Defendants expressly condition employment based on residing in this District.

Defendants also

██████████████████████. Defendants' business is also "directly and inextricably linked to the geographic territory it can serve," *IOT*, 2023 WL 631049, at *3—Defendants provide corporate cars and ████████████████████████████████████. As such, Alnylam BAE's homes are places "of the defendant." *Id.*

### B. Defendants' Clinical Trials

#### 1. The Trial Sites Are Physical Places of Business in This District

Defendants' clinical trial sites are "physical, geographical locations" in the District from which Defendants carries out their business. Defendants conduct and control clinical trials in this District (including in Austin) at clinical trial sites using clinical trial protocol—a comprehensive document that acts as the essential step-by-step blueprint for conducting a clinical trial. Ex. 14 (Slugg Dep.) at 33:1-36:19, 125:2-21, 144:1-15, 146:9-17; Ex. 1 (Bossone Dep.) at 37:18-38:14. The protocol outlines in detail how a study will be conducted, ensuring the safety of participants and the integrity of the collected data (which Defendants own). *Id.* Defendants ███████████ ████████████████████████████████. Ex. 14 (Slugg Dep.) at 41:21-42:23 (testifying that Defendants must █████████████████████████████). These sites are fixed, physical locations in the District where core aspects of Defendants' business are carried out continuously over significant periods, using study drugs and equipment furnished by or on behalf of Defendants and stored at the institutions pursuant to Defendants' instructions. *Id.* at 70:6-76:7; Ex. 26 (UT-MDA-4192). This meets the first *Cray* factor.

#### 2. The Trial Sites Are Regular and Established Places of Business

The second *Cray* factor is also met. Defendants trial sites are regular and established places of business in this District. *See e.g.*, Ex. 26 (UT-MDA-4192). ████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████. Indeed, Alnylam maintains a clinical trials

website about "Alnylam Clinical Trials" at various locations (including Austin), including providing the map to the trial site (in Austin) and the "Alnylam Clinical Trial Information Line" and Alnylam email address. https://clinicaltrials.alnylam.com/; Exh. 26.





In addition, the clinical trial sites have the "regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google*, 949 F.3d at 1345.  Notably, while Mr. Bossone declared that Defendants clinical trials are "administered by third party" contract research organizations ("CROs"), Dkt. 25-1 at ¶ 6, Defendants did not produce the actual agreements.  And those agreements show that the CROs and the investigators conducting Defendants' studies are Defendants' agents.

> **a.**    **The CROs Are Defendants' Agents**

The CROs are Defendants' agents.  *In re Google*, 949 F.3d at 1345–46 (reciting standard). The agreements recognize ███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████



These are all essential tasks central to conducting the trials.

This shows Defendants exercise "complete, absolute, and exclusive control" over the clinical trials and CROs are their agents. *See, e.g.*, *AGIS v. Google*, 2022 WL 1511757, at *5 (E.D. Tex. May 12, 2022) (finding that CTDI was Google's agent in light of Google's "interim control" of CTDI, including requiring compliance "with various reporting requirements," appointing of account representatives, conducting regular communications with Google, determining the specifications of the provided service, and providing detailed instructions about how to "maintain Google's products."); *3D Scan v. Chrome*, 2024 WL 1117933, at *3 (E.D. Tex. Mar. 14, 2024) (finding agency where the principal provided regular, "step-by-step instructions" directing the agents' manufacturing processes, assembly of products, and installation procedure); *IOT*, 2023 WL 6318049, at *6 ("[T]he contracts establish that the Authorized Service Dealers are agents of Brinks Home" because "(1) Brinks Home has the right to direct and control the Authorized Service Dealers, (2) Brinks Home has manifested consent that Authorized Service Dealers act on its behalf, and (3) the Authorized Service Dealers have consented to act on behalf of Brinks Home.").

### b.    The Investigators Are Defendants' Agents

Alnylam also exercises interim control over its Institutions and their respective Investigators to conduct their clinical trials.  Ex. 14 (Slugg Dep.) at 145:23-146:21 (testifying that agreement "[REDACTED]). The Institutions (in addition to their personnel) are bound to [REDACTED]



. Courts have regularly found that providing this type of detailed, ongoing guidance for specific business processes satisfies the Federal Circuit's interim control standard. *See AGIS*, 2022 WL 1511757, at *5; *3D Scan*, 2024 WL 1117933, at *3; *IOT*, 2023 WL 6318049, at *6.

### 3.    The Clinical Trial Sites are the Place of the Defendants

The trial sites are "places" of Defendants because Defendants

████████████████████████. Ex. 14 (Slugg Dep.) at 38:1-12, 42:1-23, 84:9-14, 85:12-24, 100:1-14, 146:9-17; Ex. 15 (ALNY_REGENTS_VD_00000038).    In addition, Defendants identify these sites on their website as "Alnylam Clinical Trials," reinforcing that they are places of Defendants. Ex. 26 (UT-MDA-4192). The CROs and investigators are Defendants' agents who conduct Defendants' business at those trial sites.

On clinical trials, Defendants (at 7) rely on the *4WEB* case. *4WEB v. NuVasive*, 2024 WL 1932416, at *3 (E.D. Tex. May 2, 2024).  But that case actually helps The University.  There, the defendant "d[id] not require its employees to live in this District," and the Plaintiff "d[id] not argue that the employees' homes are the places of business of" the defendant.  The opposite is true here. The employees' homes are Defendants' place of business, and Defendants require their Austin and San Antonio sales representatives to reside in this District.  That same distinction applies to *Bausch* and *Gilead*—there was no evidence there that those defendants required their employees to reside in the corresponding district. *Univ. of Minn. v. Gilead*, 299 F. Supp.3d 1034, 1044 (D. Minn. 2017); *Bausch v. Mylan*, 2022 WL 683084, at *7 (D.N.J. Mar. 8, 2022).  Here, Defendants do.

## III.    THE COURT SHOULD NOT TRANSFER THIS CASE

The Court may only grant transfer under Section 1404(a) if Defendants show that transfer would be <u>clearly</u> more convenient.  The burden is "not simply that the alternative venue is more convenient, but that it is clearly more convenient."  *Beijing Meishe v. Tiktok*, 2023 WL 2903978, at *2 (W.D. Tex. Apr. 11, 2023).  "[T]here is always some inconvenience that is 'expected and acceptable,' and it is not enough that it would be convenient for a defendant to litigate elsewhere." *Id.* (quoting *In re Planned Parenthood*, 52 F.4th 625, 629 (5th Cir. 2022)).  "Rather, the movant must clearly establish good cause for transfer based on convenience and justice."  *Id.*

Defendants do not meet this standard.  The University is headquartered here and, unsurprisingly, all of its witnesses and documents are in Texas.  In addition, because the research-

and-development that led to the asserted patent happened in Texas, there are many third parties that are within the statewide subpoena power of this Court—and not the Massachusetts Court. In addition, Defendants have accused The University (and the lead inventor) of defrauding the Patent Office. The witnesses relevant to those allegations—including third parties—are located in Texas. In contrast, Defendants (through Mr. Bossone) only provide a non-specific laundry list of witnesses allegedly in the Massachusetts area. Courts routinely decline to credit that type of evidence and this Court should as well, especially in light of the demonstrably false statements in Mr. Bossone's declaration. And the reality is, wherever this case is tried, Defendants will not call dozens of witnesses in their case to testify on the same topics. The Motion should be denied.

## A. The Private Interest Factors Do Not Favor Transfer

### 1. The Cost of Attendance for Willing Witnesses Does Not Favor Transfer

Under the 100-mile rule, "[w]hen the distance between an existing venue for trial ... and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023). Applying this rule shows that transfer is not appropriate.

Transfer would significantly inconvenience The University's witnesses, who would now need to travel an additional 1,500 miles for trial. The University is located here, along with its intellectual property personnel, and MD Anderson's technology transfer personnel are located in Houston. Ex. 29; Ex. 30. The two lead inventors, Drs. Sood and Lopez-Berstein are located in Houston, which is significantly closer than Boston. Ex. 27 (UT-MDA-4197); Ex. 28 (UT-MDA-4604). "As this Court has explained, 'an inventor's testimony will likely be highly relevant and material at trial.'" *Marble VOIP v. RingCentral*, 2023 WL 3938480, at *10 (W.D. Tex. June 9, 2023) (quoting *Intell. Ventures v. Gen. Motors* 2022 WL 16924468, at *9 (W.D. Tex. Nov. 1, 2022)). That is especially the case because the inventors met with Defendants to commercialize

The University's technology and Defendants now accuse Dr. Lopez-Berestein of defrauding the Patent Office (Dkt. 58 at 5–12). In addition, Dr. Lopez-Berestein is also knowledgeable about the prior art because he is listed as the inventor on almost 20 of the prior art references cited by the asserted patent. Dkt. 1-1. The Texas inventors are key "will call" trial witness, and they will be significantly inconvenienced under the 100-mile rule if this case is transferred to Boston.

Transfer would also inconvenience third-party witnesses by an additional 1,500 miles of travel. Defendants' inequitable conduct allegations implicate Texas-based witnesses—Dr. Ana Maria Tari, the co-inventor of the allegedly "concealed" PCT Publication (Dkt. 58 at ¶¶ 13, 19), the patent prosecution attorney Monica A. De La Paz (Dkt. 66-2 at 8), and the law firm Fulbright & Jaworkski (now Norton Rose Fulbright) (*id.*). Dr. Tari and Ms. De La Paz reside in Texas and Norton Rose has an office in Austin, Texas. Ex. 18 (Tari LinkedIn profile); Ex. 19 (De La Paz LinkedIn profile); Ex. 20 (Norton Rose Austin Webpage). Given the seriousness of Defendants' allegations, The University would be significantly prejudiced if these witnesses—who are not within the subpoena power of the Massachusetts Court—were unwilling travel to testify at trial.

Dr. Tari also has relevant knowledge because she was Director, Preclinical Operations and Research at Bio-Path Holdings, Inc., an exclusive licensee to '717 Patent application. Ex. 21 (Bio-Path License); Ex. 24 (Bio-Path SEC Filing 8K). Bio-Path is located in Houston, TX. Ex. 25 (UT-MDA-4187). Two of the four signatories to the Bio-Path license, Leon Leach and Christopher C. Capelli, M.D. have relevant knowledge as to the license details and are in Texas Ex. 21 (Bio-Path License) at 37. Finally, Defendants' clinical investigators in the District also have relevant knowledge. Dr. Yessar Hussain, one of Defendants' customers and principal investigators for their ONPATTRO clinical trials, is located in this District. Ex. 22 (Austin Neuromuscular Center Website: Provider Profile); Ex. 23 (ALNY_REGENTS_VD_00000008) at 8. Dr. Hussain is also

an internationally known expert on Amyloidosis and likely to have relevant knowledge on the disease state that ONPATTRO treats. Ex. 10 (Smith Dep.) at 22:2-23:1.

In contrast, Defendants (through Mr. Bossone) only identify a laundry list of nearly 40 "willing" technical witnesses. Dkt. 70 at 13. In reality, Defendants will not call 40 duplicative witnesses at trial. And even the witnesses Mr. Bossone does identify appear incomplete. Mr. Bossone confirms that one of the ONPATTRO team members, John Vest, resides in Massachusetts—but he does not confirm if other members reside elsewhere. Nor does Mr. Bossone provide specifics about Mr. Vest's involvement with ONPATTRO. In addition, Mr. Bossone states that "***to my knowledge***, all of the aforementioned individuals [Defendants' employees] still reside in the District of Massachusetts" (Dkt. 21-1 at ¶ 19 (emphasis added)), but Mr. Bossone does not say what the basis of his "knowledge" is. Indeed, Mr. Bossone's knowledge on key venue facts was wrong and incomplete. Defendants do not identify with specificity which (or many) witnesses they will actually call. This failure to "identif[y] any specific employees" who have "relevant and material information about th[e] case" weighs against transfer. *Vervain LLC v. Kingston Tech. Co.*, No. 24-cv-00254, Dkt. No. 56 at 12 (W.D. Tex. Jan. 28, 2025). And, at best, the errors in Mr. Bossone's declaration "suggests that . . . evidence [of these individuals not residing in the District of Massachusetts] may exist but is not known to Mr. [Bossone] because he failed to investigate it." *Jawbone Innovations v. Apple* No. 6:21-CV-00984-ADA, Dkt. No. 103 at 11 (W.D. Tex. Oct. 5, 2022). The Court should decline to credit Mr. Bossone's declarations.

Transfer will significantly inconvenience The University's key witnesses. Defendants have not shown a significant inconvenience to witnesses who may or may not testify and may or may not be located in Massachusetts. Accordingly, this factor weighs against transfer.

### 2.    The Sources of Proof Factor Does Not Favor Transfer

This factor does not favor transfer. "The question is relative ease of access, not absolute

ease of access." *In re TikTok, Inc.*, 85 F.4th at 358. "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *Id*. "[T]he location of evidence bears much more strongly on the transfer analysis when… the evidence is physical in nature." *Planned Parenthood*, 52 F.4th at 630. Defendants fail to show that transfer is warranted.

The University's records are in Texas or digitized. The University is headquartered here in Austin, and its documents are here. The University owns the asserted patent, and its patent prosecution records are in Austin or at counsel's offices (also located here). Additional relevant documents from MD Anderson (*e.g.*, technical documents, intellectual property licensing documents, and product discussions with Defendants) and Bio-Path (*e.g.*, intellectual property and licensing documents and prior art) are in Houston. Defendants also do not assert what format the bulk of the relevant documents are in and do not point to any physical proof in Massachusetts, so "this factor is at most neutral and fails to demonstrate" that the District of Massachusetts "is clearly more convenient." *Beijing Meishe Network*, 2023 WL 2903978, at *4.

### 3. The Compulsory Process Factor Does Not Favor Transfer

This factor weighs against transfer. "Unlike the willing witness factor, the compulsory process factor is more about the convenience of the litigating parties in making their case rather than the convenience of the unwilling witnesses compelled to testify." *In re Hulu,* 2021 WL 3278194, at *4 n.2 (Fed. Cir. Aug. 2, 2021). This factor "receives less weight" when a witness has not been shown to be unwilling to testify. *Planned Parenthood*, 52 F.4th at 631.

Defendants do not make out a case under this factor. They rely on Mr. Bossone's unreliable declarations, which should be granted no weight. And this factor does not support Defendants' motion for the same reasons as the willing-witness factor—Defendants do not say (1) what (if any) relevant information specific witnesses have or is likely to be needed at trial, (2) whether that information is cumulative of other witnesses or (3) whether any of these 31 witnesses would be

unwilling to testify. *See* Dkt. 70 at 15 (citing Bossone Decl. at ¶¶ 16, 19, 27). Defendants' focus on the number of witnesses misses the point, not least, because Defendants will not present "more than 31" third-party witnesses at trial. Since Defendants cannot point to any specific witness, "this factor fails to support transfer." *Beijing Meishe*, 2023 WL 2903978, at *4.

Conversely, transfer will inconvenience The University. The Texas-based third-party witnesses identified above are all within the subpoena power of this Court (either within 100 miles or within the Court's statewide subpoena power). They will not be within the subpoena power of the Massachusetts Court. And, as it stands now, these third-party witnesses are likely important.

For example, one third-party witness relating to Defendants' inequitable conduct claims is Bio-Path's Dr. Tari. Defendants claim that Dr. Lopez-Berestein's statements in his declarations contradict the PCT Publication's teachings. Dr. Tari, as the co-inventor on the PCT Publication, may have relevant information on that issue, *e.g.*, what the PCT Publication discloses as it relates to Dr. Lopez-Berestein's declaration. Similarly, the Austin-based prosecution counsel who submitted the declarations and prior art are a potentially important witnesses whose live testimony may be important (inequitable conduct requires a determination of intent to deceive).

And then there are the Texas inventors. They are undeniably The University's key witnesses. However, given that Dr. Lopez-Berestein is at retirement age and Dr. Sood is nearing retirement age, transfer (and its associated delay) risks the ability of The University to present inventor testimony in person. Ex. 27 (UT-MDA-4197); Ex. 28 (UT-MDA-4604). Given they are in Houston, this Court would have statewide subpoena over them if they became third parties. The Massachusetts Court would not. Thus, for these reasons, this factor weighs against transfer.

### 4.    The Other Practical Problems Factor Do Not Favor Transfer

Defendants here reiterate that the expense and ease of potential witnesses traveling to the District of Massachusetts would be easier than traveling to this District, but as explained above,

Defendants have not listed any potential witnesses that they believe will be called upon to testify at trial. At the same time, the most relevant witnesses at this point in the litigation are in Texas, including Drs. Sood and Lopez-Berestein, and it is easier for them to travel to this District than to the District of Massachusetts. Therefore, this factor does not favor transfer.

### B.    The Public Interest Factors Do Not Favor Transfer

Defendants address the "local interest factor" and concede that the remaining factors are neutral. They argue that this factor favors transfer because (according to Mr. Bossone) the development of the accused product and majority of their employees are allegedly in Massachusetts. Dkt. 70 at 16. But Defendants took that technology from The University, who developed the technology in Texas and patented it from this District. In response, Defendants accuse The University of defrauding the Patent Office from this District. There is thus a local interest: Defendants "call[] into question the work and reputation of several individuals residing in or near" this District. *In re Hoffmann*, 587 F.3d 1333, 1336 (Fed. Cir. 2008). In addition, the court congestion factor weighs against transfer—on average, the time to trial for patent cases in this District is 11 months faster than in Massachusetts. Ex. 31 (Docket Navigator Statistics); *Ecofactor v. Resideo*, 2022 WL 13973997, at *9 (W.D. Tex. Oct. 21, 2022) (noting that an approximately 11-month gap—about 35.2 months to trial in the Northern District of Texas versus roughly 24 months in W.D. Tex.— weighed against transfer.)

After balancing the factors, it is clear that both the private and public interest disfavor transfer. Therefore, Defendants "fail[s]to meet their high burden of showing that transfer…is ***clearly more convenient***" (emphasis added). *Beijing Meishe*, 2023 WL 2903978, at *9.

## IV.    CONCLUSION

Defendants have not met their burden u to show that venue is improper or inconvenient in this District. The University respectfully requests that the Court deny the Motion.

Dated: October 8, 2025

**MCKOOL SMITH, P.C.**

/s/ *Christian J. Hurt*
Christian J. Hurt
Texas Bar No. 24059987
churt@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: (214) 978-4060
Telecopier: (214) 978-4044

Jamie Levien
New York Bar No. 6161970
jlevien@mckoolsmith.com
**MCKOOL SMITH, P.C.**
1717 K Street NW, Suite 1000
Washington, DC 20006
Telephone: 202-370-8300
Telecopier: 202-370-8344

Jennifer Truelove
Texas Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

Saif Askar
New York Bar No. 5833181
saskar@mckoolsmith.com
**MCKOOL SMITH, P.C.**
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Telecopier: (713) 485-7344

*ATTORNEYS FOR PLAINTIFF THE*
*BOARD OF REGENTS OF THE*
*UNIVERSITY OF TEXAS SYSTEM*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on October 8, 2025.

/s/ *Christian Hurt*
Christian Hurt