IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM<br><br>        Plaintiff,<br><br>   vs.<br><br>ALNYLAM PHARMACEUTICALS INC. AND ALNYLAM U.S., INC.<br><br>        Defendants | Civil Action No. 1:24-cv-1524-DAE<br><br>JURY TRIAL DEMANDED |

**REPLY IN SUPPORT OF DEFENDANTS' OPPOSED RENEWED MOTION TO DISMISS THE COMPLAINT FOR IMPROPER VENUE OR IN THE ALTERNATIVE TRANSFER UNDER RULE 12(b)(3)**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | VENUE IS NOT PROPER IN THE WESTERN DISTRICT OF TEXAS | | 2 |
| | A. | Two Remote Sales Employees' Homes in This District Do Not Create a Physical "Regular and Established Place of Business" of Alnylam | 2 |
| | B. | Clinical Trial Sites Are Not "Regular and Established Places of Business" | 5 |
| | C. | The Private Interest Factors Favor Transfer to the District of Massachusetts | 8 |
| | | 1. The Cost of Attendance for Willing Witnesses Favors Transfer | 8 |
| | | 2. The Relative Ease of Access to Sources of Proof Favors Transfer | 9 |
| | | 3. The Availability of Compulsory Process Factor Favors Transfer | 9 |
| | | 4. The Other Practical Problems Factor Favors Transfer | 9 |
| | D. | The Public Interest Factors Favor Transfer to the District of Massachusetts | 9 |
| III. | CONCLUSION | | 10 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*3D Scan Guide, LLC v. Chrome Full Arch Guided Sys.*,
  2024 WL 1117933 (E.D. Tex. Mar. 14, 2024) ............................................................................7

*Affinity Labs of Tex., LLC v. Blackberry Ltd.*,
  2014 WL 10748106 (W.D. Tex. June 11, 2014) .......................................................................9

*AGIS Software Dev. LLC v. Google LLC*,
  2022 WL 1511757 (E.D. Tex. May 12, 2022) ..........................................................................7

*AGIS Software Dev. LLC v. T-Mobile USA, Inc.*,
  2021 WL 6616856 (E.D. Tex. Nov. 10, 2021) ..........................................................................4

*Bausch Health Ireland Ltd. v. Mylan Labs. Ltd.*,
  2022 WL 683084 (D.N.J. Mar. 8, 2022) ...................................................................................6

*In re Cordis Corp.*,
  769 F.2d 733 (Fed. Cir. 1985) ..................................................................................................5

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ........................................................................................ *passim*

*DataQuill, Ltd. v. Apple Inc.*,
  2014 WL 2722201 (W.D. Tex. June 13, 2014) .......................................................................10

*In re Google LLC*,
  2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...........................................................................9

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) ................................................................................................6

*HD Silicon Sols.LLC v. Microchip Tech. Inc.*,
  2021 WL 4953884 (W.D. Tex. Oct. 25, 2021) .......................................................................10

*IOT Innovations LLC v. Monitronics Int'l, Inc.*,
  2023 WL 6318049 (E.D. Tex. Sept. 11, 2023) .....................................................................4, 7

*In re Meta Platforms, Inc.*,
  2023 WL 7118786 (Fed. Cir. Oct. 30, 2023) ..........................................................................10

*Pac. Gas & Elec. Co. v. U.S.*,
  838 F.3d 1341 (Fed. Cir. 2016) ................................................................................................6

*RegenLab USA LLC v. Estar Techs. Ltd.*,
   335 F. Supp. 3d 526 (S.D.N.Y. 2018) ................................................................................5

*Regents of Univ. of Minn. v. Gilead Sciences, Inc.*,
   299 F. Supp. 3d 1034 (D. Minn. 2017) ..................................................................2, 3, 4, 6

*In re Samsung Elecs. Co., Ltd.*,
   2023 WL 8642711 (Fed. Cir. Dec. 14, 2023) ....................................................................9

*In re Volkswagen Group of Am. Inc.*,
   28 F.4th 1203 (Fed. Cir. 2022) ......................................................................................6, 7

*Westport Fuel Systems Canada, Inc. v. Ford Motor Co.*,
   No. 2:21-cv-00453, D.I. 115 (E.D. Tex. Aug. 22, 2022) ...................................................4

*XY, LLC v. Trans Ova Genetics, LC*,
   2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ....................................................................9

I.  **INTRODUCTION**

Plaintiff's opposition effectively argues for pharmaceutical companies to be subject to venue across the Unted States if they employ a handful of remote sales employees in any one District—a result plainly at odds with governing Federal Circuit authority since the Supreme Court's landmark 2017 decision in *TC Heartland*. Boiled to its essence, Plaintiff's argument rests on three thin reeds, namely two remote sales employees required to be in the District, a remote employee that voluntarily lives in the District but covers 14 states, and third-party clinical trial sites that the governing law makes clear do not constitute a place of business. Such attenuated contacts fall far short of establishing venue under Section 1400, which requires a higher showing to establish a physical, regular and established place of business.

Venue discovery further confirmed the facts described in Dr. Bossone's two declarations. Plaintiff's introduction tries to paint a picture of untruthfulness by pointing to an error in Dr. Bossone's first declaration concerning two remote sales employees that were required to live in Austin and San Antonio. D.I. 80, 1. But as Plaintiff fully knows, Dr. Bossone affirmatively corrected this fact in his second declaration and explained during his deposition that at the time he executed his first declaration he believed his statements were accurate, but subsequent investigation led him to understand that it was not correct.[1]  D.I. 79-2, 17:9-19, 19:9-19, 30:16-24.

In any event, full discovery and the evidence both parties submitted confirm that venue is not proper here. If a company with no physical office or facility in a district which happens to have two remote sales employees that do not store or sell products in their home offices should nevertheless be subject to venue there, it would nullify the rule set forth in *TC Heartland* and its appellate progeny. The case should be dismissed or transferred to the District of Massachusetts.

---

[1] Plaintiff's rhetoric is unfounded and cannot serve as a reasonable basis to disregard Dr. Bossone's declarations, much less the plethora of additional evidence Alnylam advances.

1

## II. VENUE IS NOT PROPER IN THE WESTERN DISTRICT OF TEXAS

Plaintiff has failed to carry its burden to establish all three required elements of the *Cray* test to show a physical regular and established place of business of Alnylam in this District as of the Complaint's filing date. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) ("(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."). "[T]he regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision." *Id*. at 1361. That required "more" is plainly missing here.

### A. Two Remote Sales Employees' Homes in This District Do Not Create a Physical "Regular and Established Place of Business" of Alnylam

First, Plaintiff has failed to demonstrate that remote employees' homes are Alnylam physical places of business in this District. Only two sales representative employees out of 2600$^+$ Alnylam employees are required to live within their assigned territory of San Antonio and Austin; however, they do not "work from a stand-alone business office" in this District, but instead, primarily work in the field, "visiting their clients, customers, [and] healthcare providers," as Plaintiff admits. D.I. 80-1, 6; D.I. 71-2, 12:17-14:3; 18:5-14; *Regents of Univ. of Minn. v. Gilead Sciences, Inc.*, 299 F. Supp. 3d 1034, 1042 (D. Minn. 2017) ("While the Court agrees that Gilead's employees service customers in Minnesota, whether through visits to healthcare providers or clinical trial facilities, *this servicing occurs at the customer's physical place, not Gilead's*.") (emphasis added). Alnylam's remote sales employees do perform some work in their homes when not in the field, *but they do not store products for sale in their homes or anywhere in the District, nor do their homes function as distribution centers. Id*. These facts are undisputed. The "negligible quantity [of Alnylam literature that may be kept in their homes]…does not sufficiently

2

support a finding that these homes constitute [Alnylam's] physical place in" the District. *Gilead*, 299 F. Supp. 3d at 1041; *see* D.I. 70, 10; D.I. 70-4, 32:25-33:17; D.I. 25-1, ¶ 10.

Second, Plaintiff has failed to establish that Alnylam's two remote sales employees' homes are "regular and established places of business." At the outset, except for the two remote sales employees, the physical location of its sales team is not set in the District, as most sales employees "can move his or her home out of the district at his or her own instigation, without the approval of [Alnylam]."[2] *Cray*, 871 F.3d at 1362-63; D.I. 70-8, 21:5-20, 44:4-53:19. Importantly, Alnylam's sales team does not fulfill orders, stock any of the Accused Product, or sell product directly to any customer in the District. D.I. 70, 10; D.I. 71-2, 21:15-22:20, 23:11-22. It is undisputed that multi-billion, large third-party wholesale distributors outside the District (*e.g.*, McKesson or Cardinal) purchase the product from Alnylam and then customers such as hospitals and specialty pharmacies place orders directly with the wholesalers. D.I. 70, 11; D.I. 71-2, 25:1-26:3, 47:16-48:23.

And there have been **no** sales of the Accused Product ONPATTRO® in Texas in 2024 or 2025 from Alnylam's distributor, Cardinal. D.I. 71-2, 52:19-53:3; D.I. 70-4, 11:3-18, 58:3-10. Plaintiff points to a sales spreadsheet (D.I. 80-1, 8), but fails to inform this Court that the shipment/sales for ONPATTRO® *were well-prior to the filing of the Complaint* further supporting that venue is not proper in this District. *See* D.I. 70, 4 (citing *Correct Transmission LLC v. ADTRAN, Inc.*, 2021 WL 1967985, *3 (W.D. Tex. May 17, 2021)); *see also Gilead*, 299 F. Supp. 3d at 1057 (internal citations omitted) ("emphasis on financial performance…is misplaced." *Cray* focused on a **place** of business and high sales figures did not establish that factor).

Third, Plaintiff has failed to establish "a place of the defendant." It is undisputed that

---

[2] Plaintiff notes that Alnylam's Medical Science Liaison, Jane Regan, is also assigned to a market that includes this District. D.I. 80-1, 3. However, Ms. Regan is responsible for the mid-central region *which covers **14** states in their entirety, and she resides in the District of her own choosing*. D.I. 70, 9. That cannot serve to constitute a physical place of business of Alnylam.

3

Alnylam does not own, lease, or rent any portion of its remote sales employees' homes. D.I. 70, 9-10; D.I. 21-1, ¶ 12; D.I. 70-9, 51:23-24. Reimbursements for basic office supplies and leasing vehicles are "non-fixed, temporary items" that are "insufficient to establish or ratify" a place of business of the defendant. *Gilead*, 299 F. Supp. 3d at 1043-44; *Cray*, 871 F.3d 1364 (reimbursing employees for phone, internet, and business-related travel expenses is insufficient). Importantly, Alnylam does not hold out its two remote sales employees' homes as the company's places of business and the address displayed on their business cards *is the Massachusetts address of Alnylam's headquarters*. Ex. 8. As to phone numbers, both list their mobile line or Alnylam's corporate line in Massachusetts. *Id.*; *Cray*, 871 F.3d 1364 (venue improper where employees listed their home phone numbers on their business cards). "Such scant evidence of a physical place, of the Defendant, in this District is insufficient to establish venue." *Gilead*, 299 F. Supp. 3d at 1045.

Faced with this, Plaintiff points out leased vehicles the remote sales employees use to visit customers and potential customers. D.I. 80-1, 5-6. But notably, Plaintiff fails to expressly address or distinguish the three authorities Alnylam cites in its Opening Brief that find such leased vehicles are "transient" and not "established" places of business. D.I. 70, 10 (citing *Westport Fuel Systems Canada, Inc. v. Ford Motor Co.,* No. 2:21-cv-00453, D.I. 115, at 6 (E.D. Tex. Aug. 22, 2022); *AGIS Software Dev. LLC v. T-Mobile USA, Inc.*, 2021 WL 6616856, *5 (E.D. Tex. Nov. 10, 2021); *Gilead*, 299 F. Supp. 3d at 1043). Plaintiff's reliance on *IOT* is misplaced. D.I. 80-1, 6. In *IOT*, the defendant's remote employees did "not report to a corporate office" and stored "leased[] company vehicles and more than ten thousand dollars of equipment and inventory (Accused Products) at their homes." *IOT Innovations LLC v. Monitronics Int'l, Inc.,* 2023 WL 6318049, *3 (E.D. Tex. Sept. 11, 2023). Unlike *IOT*, (i) Alnylam's remote sales employees report to Alnylam's headquarters in Massachusetts and do not store any products in their homes, (ii) their homes do not function as distribution centers, (iii) administrative support comes solely from Alnylam's

4

Massachusetts headquarters, and (iv) there is no evidence that the leased vehicles are used to distribute Alnylam products. D.I. 21-1, ¶ 10; D.I. 70, 10; D.I. 70-4, 32:25-33:17; D.I. 25-1, ¶ 10.

The additional cases Plaintiff cites are distinguishable. D.I. 80-1, 2-8. In *RegenLab*, the court concluded that "home offices constitute a primary physical location for Eclipse's business" because "***all*** [of defendant's] employees worked out of their homes." *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 549 (S.D.N.Y. 2018) (emphasis added). That is not the case here. The vast majority of Alnylam's employees work at Alnylam's headquarters and affiliated physical locations in Massachusetts. D.I. 21-1, ¶¶ 6, 9; *see Cray*, 871 F.3d at 1364, n.1 (noting business model does not rest on all employees being remote). Plaintiff's reliance on *Cordis*, which predates *TC Heartland* is also misplaced. In *Cordis*, defendant used its employees' homes to maintain a stock of literature, $30,000-$60,000 worth of products that the employees took directly to clients, as well as engaging secretarial services physically located in the district where the employees' business cards listed the telephone number answered by the secretarial service. *In re Cordis Corp.*, 769 F.2d 733, 735 (Fed. Cir. 1985). Those are indisputably not the facts here.

In sum, under *Cray* and other appellate authorities it cites, Alnylam's limited activities of its two remote sales employees who contact health-care providers but stock no product cannot "'by any stretch of the imagination' be characterized as a regular and established place of business of the defendant." *Cray*, 871 F.3d at 1366 (citing appellate court decisions concluding no venue where remote, home-based sales employees are reimbursed for business expenses by the defendant, but maintain "no stock in trade, no displays, no samples, and no showroom" and further "had no staff or even secretarial help located in his home office.").

### B. Clinical Trial Sites Are Not "Regular and Established Places of Business"

The clinical trials Alnylam sponsors in various hospitals and universities worldwide—including this District—fall well outside what the *Cray* court considered relevant to finding a

physical "regular and established place of business" of the defendant. Unsurprisingly, Plaintiff has not cited any case law relying on clinical trial sites to find venue (D.I. 80-1, 9-14) and fails to reasonably distinguish the cases Alnylam cited that concluded clinical trials are insufficient to establish a place of business. D.I. 25, 2-3; D.I. 70, 7-8 (*citing Gilead*, 299 F. Supp. 3d at 1044; *Bausch Health Ireland Ltd. v. Mylan Labs. Ltd.*, 2022 WL 683084, *7 (D.N.J. Mar. 8, 2022)).

The clinical trial sites are not physical places of business of Alnylam. Alnylam does not (i) own, lease, or rent the clinical trials' locations, (ii) employ the personnel used to run the clinical trials, (iii) identify its name on any building where the clinical trials are run, or (iv) identify the address of the clinical trial sites as places of business. D.I. 70, 5-6; D.I. 21-1, ¶¶ 21-24; D.I. 25-1, ¶ 6; D.I. 70-5, 132:10-17. The clinical trial sites are independently owned and operated hospitals or academic institutions entirely unaffiliated with Alnylam. D.I. 25, 3. Plaintiff ignores the actual operation of clinical trials whereby Alnylam contracts with third party CROs to conduct Alnylam's clinical trials, including investigator and site selection. D.I. 70, 6-7; D.I. 70-5. The investigators and sites utilize their own laboratories to conduct and administer Alnylam's clinical trials and other sponsors' trials. *Id*. The CROs monitor the clinical trials—not Alnylam. D.I. 70-5, 45:25-46:22.

Faced with these facts, Plaintiff attempts to establish that CROs are "agents" of Alnylam. *Pac. Gas & Elec. Co. v. U.S.*, 838 F.3d 1341, 1359 (Fed. Cir. 2016) ("The party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence."). To establish an agency relationship, the principal must have "interim control" over the agent's work. *In re Volkswagen Group of Am. Inc.*, 28 F.4th 1203, 1209 (Fed. Cir. 2022) (citing *In re Google LLC*, 949 F.3d 1338, 1345-46 (Fed. Cir. 2020)).

Contrary to Plaintiff's argument, the CRO contracts (which Alnylam ***did*** produce contrary to Plaintiff's assertion) do not recognize the CRO as Alnylam's agent. D.I. 80-1, 11. Each of the Master Services Agreements with Alnylam's CROs expressly state ████████████

6

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████ D.I. 80-15 (PPD), ¶ 17.1 (emphasis added); Ex. 9, ¶ 24; Ex. 10, ¶ 7.1; D.I. 70, 6; D.I. 70-5, 19:13-20. Contractually, there is plainly no agency.

Even if there were, the CROs are not located in the District: ████████████ ████████████ (D.I. 80-15, 1); ████████████████████████████████ (Ex. 9, 1); and ████████████████████████████ (Ex. 10, 1). A physical regular and established place of business in the District cannot be established by agency through the out-of-District CROs. Plaintiff's "step-by-step control" argument also falls apart under scrutiny. D.I. 80-1, 12. The CRO contracts' provisions "imposes constraints" or "set[] [industry] standards…for acceptable service quality" that "does not of itself create a right of control [by Alnylam]." *Volkswagen*, 28 F.4th at 1209-10; *see also* D.I. 70-5, 138:19-140:3. Importantly, none of the four Alnylam clinical trials that had recently completed or were ongoing in the District even involved the Accused Product ONPATTRO®. D.I. 70-5, 142:19-143:20.

Plaintiff's cited cases are not to the contrary. Those cases do not involve third-party clinical trials and unlike here, there was an undisputed physical place of the defendant in the district. D.I. 80-1, 12; *AGIS Software Dev. LLC v. Google LLC*, 2022 WL 1511757, *3 (E.D. Tex. May 12, 2022) (Google maintained "the Google Secured Area" of a facility located in the district); *IOT*, 2023 WL 6318049, *6 (defendant's authorized service dealers had physical locations in the district); *3D Scan Guide, LLC v. Chrome Full Arch Guided Sys.*, 2024 WL 1117933, *2 (E.D. Tex. Mar. 14, 2024) (defendant had its laboratory locations in the district). Alnylam does not own or control any physical place in this District or have any Texas employees that work for the clinical trial sites or the CROs. *See, e.g.*, D.I. 70, 6; D.I. 70-5, 21:5-11.

Even more far-fetched is Plaintiff's claim that the clinical trial sites (Institutions) and their

7

Investigators (doctors at the Institutions) are Alnylam's agents. D.I. 80-1, 12. The Institutions are independently owned and operated hospitals or academic institutions entirely unaffiliated with Alnylam and Investigators are employed by those Institutions. D.I. 70-5, 141:3-11; 142:3-12. As the contract Plaintiff cites confirms, these contracts expressly state ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ D.I. 80-14, Article 16.1 (emphasis added). The Investigator has responsibility for controlling and administering the clinical trial at the site except for the protocol. D.I. 70-5, 142:13-18. These facts do not establish a physical regular place of business in the District.

### C. The Private Interest Factors Favor Transfer to the District of Massachusetts

1. <u>The Cost of Attendance for Willing Witnesses Favors Transfer</u>

Plaintiff does not—and cannot—dispute that the research and development, marketing, and finance functions of the Accused Product ONPATTRO® are directed from Alnylam's headquarters in Massachusetts. Plaintiff's primary point of contention, namely that Alnylam "will not call 40 duplicative witnesses at trial" misses the mark. D.I. 80-1, 17. Virtually all of the known Alnylam witnesses (including many non-party witnesses) are located in Massachusetts and some surely will be called at trial. D.I. 21, 11-12; D.I. 21-1, ¶¶ 16, 19-20, 27.

Plaintiff identifies two of the named inventors (located in the S.D. Tex.) and six third-party witnesses who reside in Texas and may or may not testify at trial. D.I. 80-1, 15-16 (Drs. Sood and Lopez-Berestein, inventors of the asserted patents; Dr. Tari, co-inventor of the concealed PCT publication; Ms. De La Paz, patent prosecution attorney; law firm Norton Rose Fulbright; Mr. Leach and Dr. Capelli, signatories to the Bio-Path license; and Dr. Hussain, principal investigator for ONPATTRO® clinical trials).[3] That Plaintiff will call all of these witnesses is speculative—

---

[3] Plaintiff did not disclose any of these witnesses (other than the two named inventors) until it served its first supplemental initial disclosures on October 14, 2025, a day before this filing.

8

Plaintiff makes no representation that it will call Mr. Leach, Dr. Capelli or Dr. Hussain at trial—only that such witnesses have or are likely to have relevant knowledge. *Id.*, 16-17. Regardless, the inconvenience of eight witnesses at best who live in Texas "cannot overcome the immense inconvenience that the majority of relevant witnesses would face if this case were to be tried in WDTX." *In re Samsung Elecs. Co., Ltd.*, 2023 WL 8642711, *2 (Fed. Cir. Dec. 14, 2023).

    2.   <u>The Relative Ease of Access to Sources of Proof Favors Transfer</u>

The location of the defendant's documents is the more important factor regarding relative ease of access to sources of proof. D.I. 70, 14; D.I. 21, 10; *XY, LLC v. Trans Ova Genetics, LC*, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017). Plaintiff does not dispute this well-established case law and Alnylam's records are primarily digital records and their custodians are in the District of Massachusetts. D.I. 21, 11; *In re Google LLC*, 2021 WL 5292267, *2 (Fed. Cir. Nov. 15, 2021) (location of servers and custodians relevant).

    3.   <u>The Availability of Compulsory Process Factor Favors Transfer</u>

The majority of known non-party witnesses relevant to the Accused Product are former Alnylam employees and subject to subpoena in the District of Massachusetts. D.I. 70, 15 (more than 31 non-party witnesses are located in Massachusetts). In contrast, Plaintiff identifies the same three witnesses and rehashes the same argument it made for the willing-witness factor. D.I. 80-1, 19 (identifying Drs. Lopez-Berestein, Sood, and Tari). This factor weighs "more heavily in favor of transfer when more third-party witnesses reside within the transferee venue." *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, 2014 WL 10748106, *5 (W.D. Tex. June 11, 2014).

    4.   <u>The Other Practical Problems Factor Favors Transfer</u>

Transfer is appropriate here where discovery on the merits is yet to open, and the Court has not held a *Markman* hearing or otherwise invested judicial resources on the merits of the case.

**D.  The Public Interest Factors Favor Transfer to the District of Massachusetts**

9

Local interests clearly favor the District of Massachusetts. "A local interest is demonstrated by a relevant factual connection between the events and the venue" with the focus on the design and development and sale of the Accused Product. *HD Silicon Sols. LLC v. Microchip Tech. Inc.*, 2021 WL 4953884, *6 (W.D. Tex. Oct. 25, 2021). That occurred in Massachusetts and the vast majority of Alnylam's relevant witnesses are also residents of Massachusetts. D.I. 70, 16. Plaintiff's patent infringement allegations "call[] into question the work and reputation of residents [in the District of Massachusetts], not the Western District of Texas." *DataQuill, Ltd. v. Apple Inc.*, 2014 WL 2722201, *4 (W.D. Tex. June 13, 2014).

Plaintiff makes two arguments on the public interest factor. Plaintiff's claim that Alnylam took "technology from The University" is misplaced. D.I. 80-1, 20. The only cause of action in the Complaint is for patent infringement. D.I. 1. Thus, the question at trial will be whether the Accused Product meets every limitation of the asserted claims. Plaintiff's claim that the court congestion factor shows "on *average*, the time to trial for patent cases in this District is 11 months faster than in Massachusetts" is misleading. D.I. 80-1, 20 (emphasis added). Plaintiff appears to rely on the *median* time to a jury trial, but as previously addressed, the *average* difference is marginal. D.I. 79-32; D.I. 21, 14; D.I. 21-7 (statistics indicate that cases reach trial less than three months sooner in this District compared to Massachusetts). This factor also "should not weigh against transfer when the patentee 'is not engaged in product competition in the marketplace and is not threatened in the market in a way that . . . might add urgency to case resolution'" as is the case here. *In re Meta Platforms, Inc.*, 2023 WL 7118786, *2 (Fed. Cir. Oct. 30, 2023).

### III. CONCLUSION

***Plaintiff*** has not met its burden to establish proper venue in this District. This case should be dismissed or transferred to the District of Massachusetts.

10

| | |
|---|---|
| Date: October 15, 2025 | Respectfully submitted,<br><br>*/s/ Samoneh Schickel*<br>Samoneh Schickel<br>Texas Bar No. 24097911<br>Syed K. Fareed<br>Texas Bar No. 24065216<br>McDermott Will & Schulte LLP<br>300 Colorado Street, Suite 2200<br>Austin, TX  78701<br>Tel.: (512) 726-2600, Fax: (512) 532-0002<br><br>William G. Gaede, III *(Admitted Pro Hac Vice)*<br>McDermott Will & Schulte LLP<br>415 Mission Street, Suite 5600<br>San Francisco, CA 94105<br>(650) 815-7400<br><br>Sarah Chapin Columbia *(Admitted Pro Hac Vice)*<br>Sarah J. Fischer *(Admitted Pro Hac Vice)*<br>McDermott Will & Schulte LLP<br>200 Clarendon Street, Floor 58<br>Boston, MA 02116-5021<br>(617) 535-4000<br><br>Mandy H. Kim *(Admitted Pro Hac Vice)*<br>McDermott Will & Schulte LLP<br>23 Corporate Plaza Drive, Suite 135<br>Newport Beach, CA 92660<br>(949) 757-6061 |

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing is being served via the Court's CM/ECF system on October 15, 2025, on all counsel of record who consent to electronic service.

By: */s/ Samoneh Schickel*
Samoneh Schickel